Oyez, Oyez, Oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals and the Court of Circuits are admonished to draw nigh and give their attention to the Court that is now sitting. God save the United States and this Honorable Court. Thank you. You can be seated. Mr. Jankowski, did I say that right? Good morning, Your Honors. I'm Vincent Jankowski, appointed by the Court to represent Ms. Karen Kimble in this appeal. I'd like to take this opportunity to thank the Court for the appointment. Well, we appreciate your accepting. If it pleases the Court, I'd like to reserve three minutes of my time for rebuttal. Your Honors, today I'm asking this Court to, one, to reverse Ms. Kimble's convictions on counts 1 through 20 because evidence that was necessary for those convictions was the fruit of the illegal seizure of cash from her home. And two, I'm asking the Court to reverse Ms. Kimble's convictions on counts 1 through 6 and 12 through 16 for evidentiary insufficiency. Your Honors, the concept of separation of powers mandates that the judicial branch acts as an umpire. The judicial branch basically calls balls and strikes, safe or out, in or out, block or charge. If a batter hits the ball foul and the umpire calls the ball foul, the batter cannot come back to the umpire and say, well, Mr. Umpire or Ms. Umpire, I meant to hit the ball fair. Could you call it fair? I really tried hard. And the umpire says, well, you know, really he tried. He did try very hard. I am convinced that he tried to hit the ball fair, so I'm going to call it fair. That's not the way the judicial system works, and it's similar to a warrant. The executive branch asks the judicial branch for permission to do something. And all the judicial branch does is say yes or no. I'm enjoying this analogy you've given us, but you need to get to the law and the facts of this case. We don't have a whole lot of time, but I'm not going to get you anywhere to go and give us a lecture in terms of how the French work. That's my opinion. My colleagues may feel differently, but I'd really like you to get to the law and the facts of this case. In this case, the government asked the magistrate judge for a warrant to search for certain items. Items relating to immigration fraud and items relating to perjury. The magistrate judge granted that request and gave the government, gave the executive branch the warrant to search Ms. Kimball's home. They exceeded the scope of that warrant because the cash that they seized was not, and even to this day, the government does not argue that cash that was recovered from her home was evidence of either the immigration fraud or of the perjury. They never used it as evidence. They never made any attempt to use that as evidence in those charges that they leveled against her. They then... I don't think you mean to suggest that whether something is evidence of something depends on whether the government uses it at trial. No, but it does inform the court as to whether or not they, the government is saying it's plain view. In order for it to be plain view, it has to be immediately recognizable as evidence or contraband. And that was not done in this case because cash is just not, even a large amount of cash as in this case, it is not immediately recognizable and was not immediately recognizable because in this case, they had to inquire of Ms. Kimball, what's this cash all about? And only then did they... You don't think cash could be proceeds of criminal activity? It can be, but it can be just as likely to be innocent possession of cash. So your argument is that there must be something more than just a hoard of cash to tie it to the likelihood or possibility of being... the government can come in and seize all your cash because it might be evidence of something somewhere down the line. Well, there's a difference between a few $5 bills lying around, right? And what happened here? It was a lot of cash. There's no question. It was a lot of money. But that does not necessarily mean that it's not immediately recognizable as contraband. And it wasn't in this case. Under the facts, the police see it there and they start asking, what's this all about? And she says, well, it belongs to, somebody gave it to me. And then they inquire further and then they... It doesn't belong to her. It was detained on drug charges. And then later on, she then brings up, oh, it's really mine and it should be suppressed. Doesn't that sound like something is kind of wrong with that? That argument has to come in after you have led the officers to come with a warrant in their hand. You lead them to the cash. And then you say, it's not my cash. So they take it. And then later on, you come back and say, oh, it is my cash. Now I want it suppressed. At the time of the seizure... Is anything wrong with what I just said factually that happened? Tell me, is there anything I'm missing from the fact? The only thing that I would, I would disagree. I think what happened is the officers, as they were executing the warrant, asked her, do you have any weapons or money? And she says, I don't have any weapons, but I do have money. All right, so they... You say, what was wrong with what I said? I just, I just, maybe it wasn't clear. That they asked. They asked before they found the money. And what does that make, whether they asked or not? I just believe that that's what the record shows. I'm trying to see what you said was wrong. What difference does it make if they asked or not? Because it goes to whether or not it is immediately recognizable and therefore seizable as plain view. And they said, and they said, you know, and she says, it's not mine. It belongs to my husband. And her husband was in jail on charges, on drug charges. But that does not necessarily mean that it was in plain, it was immediately recognizable. Without that interrogation, they would not have known where the money was coming from. And therefore, they, they, it was not. That, that, that is, that interrogation is what proves that it was not recognizable immediately as contraband. And therefore was not seizable under the plain view doctrine. And likewise, Your Honor... Does the conversation actually help you or hurt you? I think the existence of the conversation helps. How? Because... Would they have found the cash without our help? They might have, yes. They might have. 50-50 or less than a 50 percent? I don't know, but they certainly... Well hidden, wasn't it? Reasonably well hidden? The record's not clear about it. It was in a laundry basket. A laundry basket. And this wasn't a drug investigation. No. It was not. I mean, agents are great, but they don't read minds. Right. Do you think they would have looked in the laundry basket without our help? I don't know. I can't, I can't say. They were looking... Well, if you can't say they would not have... They were looking, what they were looking for was evidence relating to immigration fraud. Right. That would seem to me, if I'm a reasonable police officer executing this warrant, that I would look in places like file folders, desks, night tables, things where documents were found. So she hooked them to the cash? Well, she, yeah, they asked her, do you have any weapons or cash? She says, no, no weapons, but there is cash. They asked her where it was. She said it was in a laundry basket. So she showed them where it was. She put it in plain view, didn't she? But for it to be plain view, it has to be more than just observable. The prong of the plain view, the officers have to be, one, reasonably there on the premises. No question about that. Which they are. The second one, it has to be observable from where they are in plain view. And after their conversation with her, it was. But the third prong is what's not there. Right. That's what you're focusing on. It's not immediately right. It's just money. It's just money. It's a whole lot of money. It's a lot of money, but, you know, some people have. In a laundry basket. Some people have a lot of money. Who knows? But money is innocent. Which she disowned. But she still had standing to protect to its seizure, because it was from her home, and she had a possessory interest in it, which gives her standing under, or at least under Rake as a reasonable expectation of privacy, that it wouldn't be seized by the company. I don't mean to pick apart words, but it really isn't about reasonable expectation of privacy, right? It's a reasonable entitlement to possession. Because they didn't uncover the money in the course of the search. They were directed to the money by her. It's almost consent. Well, she didn't consent to it being taken. No, exactly. In terms of the discovery of the money, it was a consensual disclosure by her of the existence of the money. When they said, do you have any guns or money in the house, she didn't have to answer that question. I'm not sure she knew that. Well, of course she didn't know that. But she wouldn't have answered it if she had known. That's part of the problem in America, perhaps, in the view of some, that people don't know their constitutional rights. But it was not coerced. You don't make that argument. Well, it depends on how you mean coerced. What I mean is you don't make an argument, of course, whether or not it was. She was detained. She was not free to go. Well, was she really detained? Well, she wasn't free to go. They're not going to let – I've never – I don't know that there's anything in the record, but I have never heard of a police officer or a government agent while they're searching a premises to allow people to wander around. I think you're wrong on that on the law. She could have gone outside. She could not have stayed inside. Even if so, that would not be the basis for – the legal basis for determining whether one is detained. You may, in fact, be right. You've never seen it. That doesn't make it a legal determination. Let me go a step back. We're dealing with plain beauty. That assumes this is not within the scope of the warrant here. You focus on the attachment B here that deals with your client's reported international travel. But we've been instructed – at least our cases say we look at these things in a holistic way. We don't look at it with this hypothetical type scrutiny. So take a look at that warrant. Look at it on its face, and there's an accompanying affidavit that describes in detail the potential evidence of immigration and marriage fraud. How can it be that that's not evidence of those alleged crimes that were subject to seizure under this warrant? I don't think the government even argues that that's the case. There is – if it was Ghanaian currency – are we limited to what is being argued specifically to support that warrant? Well, the court can go beyond what the government argues, but the government never – If it can, then I want you to look at that warrant as I've indicated in the affidavit and tell me does it not describe potential evidence of immigration and marriage fraud? I don't think the cash in any way can be viewed as evidence of those charges. If it was – it's American currency. If it was currency from Ghana, it was Ghanaian currency, then I can certainly see that might be evidence of her travel to Ghana. Explain that to me, that cash currency from Ghana would be more valuable or at least I know it's more fluid in terms of you can use it there, but do you rather have Ghanaian cash than American dollar? Well, I'm saying that that would be evidence of travel to Ghana because that's where you would get the Ghanaian currency. But American currency is not evidence of travel to Ghana. American currency is not evidence of marriage fraud. It's just money. It could be used for anything. We all have money. Some people have more than others, but it doesn't mean that it is evidence of marriage fraud or immigration fraud or even of the perjury. Wouldn't people pay money to get a fraudulent visa or green card or fraudulent passport? Wouldn't people pay money for that? Not $41,000. $41,000 people would, maybe. I don't know. I don't know what the going rate is, but people pay money for these kinds of goods and services. The thing is that that proves just too much. It means that all of this, any kind of money, money is used for everything. It's fungible and it can be used for most of the time, but it's used for legitimate purposes. The fact that a person has money on them doesn't necessarily mean that they got money illegally. Would your argument be the same if it were a fine Swiss watch? I suppose it might be because, I mean, I suppose you can barter. A fine Swiss watch is worth something. I think you stepped in it just now, didn't you? If a fine Swiss watch is reasonably covered by this warrant as potential evidence of visa fraud, why wouldn't several thousand dollars in excess of $40,000 be evidence of visa fraud? Then if the Swiss watch could be bartered for an image, then the Swiss watch could be bartered for anything. That's my point. It's just like currency because you can barter it. The fact that a person had a Swiss watch. But you're conceding that the Swiss watch is covered by the warrant. I thought you were. No, no, I didn't mean to do that. I did not mean to do that because my point is if she had a fine Swiss watch and the government agents seized that, I think that would be outside the scope of the warrant because it's not, it just, it conceivably could be, but anything in her house could conceivably. She could take her furniture, her clothes, anything, jewelry, earrings or whatever because conceivably that could be used. But there is no link here in this case and the government never, I don't think, argued otherwise. I think I'm kind of encroaching on my rebuttal time here. If there are no other questions, I'd like to reserve the remaining time for rebuttal. Thank you. Ms. Gavin. Good morning. May it please the Court. First of all, in response to some of the questions that the Court had for Mr. Jankowski, I would point the Court to the government's brief starting at page 17. The government did indeed argue and still maintains that the cash was covered within the scope of the warrant just by the terms of the warrant item 11 in attachment B lists cash. And so that in and of itself covers that question of whether the seizure of the cash  was covered within the scope of the warrant. In general, the question I think here in terms of the warrant is what I think Judge Wynn alluded to, is that the case law is very clear that the Court should apply a common sense, non-hyper technical approach in assessing the validity of a warrant and the scope of the warrant. And here it is clear from the record that the scope of the warrant was intended to cover and did cover the various crimes, not just the trip to Ghana or relating to just the trip to Ghana, which frankly was in 2006. The marriage fraud and the events leading up to that occurred in 2008. The perjury investigation where the defendant testified at her sham husband's brother's drug trial was only 11 months before this warrant. And what happened here was the agents went in, listed these items at least twice, actually I think three times in the affidavit. Agent Bupp stated specifically that he had, based on all the facts in the affidavit, that there was probable cause to believe that there would be evidence of the various crimes. And in fact on the last page of the affidavit, which I believe is at Joint Appendix page 62, he even broke it out into two separate paragraphs. The first paragraph he indicated that he had reasonable cause to believe, based on the facts that he had just set forth in the affidavit, that there would be evidence relating to the Ghana trip as they related to, as he said, to perjury and false statements, citing the statutes or false testimony. In the next paragraph at the end of the affidavit, so first he says reasonable cause to believe evidence relating to the trip to Ghana and perjury. The second paragraph, reasonable cause to believe that there would be evidence relating to, and then he lists the statutes for marriage fraud, false statement, unlawful procurement of citizenship naturalization, as listed on Attachment B. Does it matter that initially when officers seized this cash, they relied upon the statements of the defendant here, not her cash, my husband's cash, involved in the drug type of crime. That they apparently seized this in connection with those type of crimes. That in fact now the basis that's being argued, that it's within the scope of the warrant is immigration. No, Your Honor, because the government's advancing alternative arguments. I'm saying that even if the court were to find or assume that the cash did not fall within the scope of the warrant as written, it nonetheless was seized on the basis of plain view as possible evidence of drug possession. Yes, I'm sorry. I'm still dealing with the scope of the warrant itself and the intent of the officers. The officers in being first seized the cash because she represents, it's not mine, it's my husband, who's involved in drugs. $40,000 is not an unbelievable sum to be involved in drugs. So they take it. Yes. But then later on she comes in and says, no, it was mine. And now the basis is that, well, even if it's yours, the scope of the warrant still covers it because the affidavit together that has to be there indicates marriage fraud and immigration and this is cash. I think that's correct, Your Honor, because I think that there are numerous cases that hold that the subjective belief of the seizing agent is actually not relevant. It is the objective standard that is applied. Could they have gotten it within the scope? Yes, Your Honor, because the agent clearly testified at the trial that he seized it because he thought it was drug proceeds. So he did certainly testify to that, but that's not actually relevant for the purposes of the analysis of whether it was within the scope of the warrant. Break down this whole plain view argument. Did she make it plain view or was it plain view in the first instance? Well, I like Judge Davis' concept, but, Your Honor, and I don't want to beat you. Did she make it plain view or was it already plain view? I would say it was already plain view. I think she could make it that, too. How did they know it? I think they were authorized to search the house. There were no limits. There were no limits. Where was this cash? Was it under clothes or anything or was it just in a basket? The record reflects that the evidence, the cash was found in a dirty laundry basket that she took them to. Meaning a basket of dirty laundry. Yes, Your Honor. I'm sorry. Well, that's my question is if you got a dirty laundry basket, dirty clothes, apparently covering the cash? Your Honor, I don't know from the record and I did not do the trial. Why is that irrelevant when you ask in plain view? I mean, if you got dirty clothes. Because the agents would have, I think it's entirely reasonable and I'd be shocked if the agents, even without asking her, did not look in a laundry basket. They're not limited in where they go in a house. And people put evidence in all kinds of places. Of course they do. And to look at, there's, I mean, you know, if you recall the Jefferson case and cash in the freezer. This is where I'm going with this. The plain view, I mean, I get the plain view, but it's almost like stricter than the plain view. You know, I understand we don't use the consent aspect of it. It's hard to consent if you say you don't own something. But she led them to this. But Mr. Junkowski says the interrogation is the problem. They wouldn't have gotten it had they not interrogated her. What's the significance of that? I disagree with it and I don't think it is accurate in terms of, frankly, there is, in the record below, there was never an argument advanced that, at least at the trial and later, that it's not been challenged on appeal. Anything about the legitimacy of that question, that was not challenged. So that's point number one. Point number two, though, I think, Your Honor, is that looking at the execution of a warrant and what agents do on a daily basis when they go into a residence to search for all kinds of evidence, including in a case like this where they're going in knowing at the time, and it's clear from the affidavit, they knew that Ms. Kimball had already testified in what they believed to be falsely in the trial of her husband's brother, who was facing trial on drug trafficking charges. They knew that her husband had been arrested and was in custody on drug charges, I believe just about a month before he was arrested, sometime in May. They knew that there had been a search warrant executed at the place where her husband had been living on Church Lane. They knew that seized from there were records including records holding account names and numbers associated with Ms. Kimball. Let me just get one point of clarification. I'm going to leave this alone. Okay. I think we're there. So she, the four, the officers are coming in for this warrant primarily for the husband, right? No, they're coming in this house for purposes of searching for the marriage fraud and the perjury from the trial 11 months before, plus perjury on the documents on the marriage fraud. So they get the cash. She is charged after she comes forth and says it's mine. She is charged. It's not on the record, but I actually looked on the docket, Your Honor. She was charged with perjury relating to the trial of the brother. There was a complaint. Charges that arose from this. Yes. That was almost two years later. After she then says it's mine. She, the record indicates that it was several months after the search that she then made the claim saying I want the cash back. It's insurance proceeds. Yes. Yes, several months later. Yes. I'm sorry. Give an example. You don't want to explain it, but that's the answer. Yes. So she does it after. Yes. And was that, if she hadn't done that, I'm trying to figure out, would she have been charged? I think that there would have been no reason to, as far as I can see from the record, I don't think the agents had any reason to ever look into her bank account. If I can ask for this money, then she gets charged. Yes. But she hadn't done it. Correct. She wouldn't have known. Correct. But she was lying one way or the other because she told the agents one thing and then she told them something else several months later. So in terms of the particularity requirement, I believe that the magistrate judge correctly issued this warrant for the items listed and that were not limited by this reference to the Ghana trip. And that to find that somehow the seizure of the cash then led to the fruit of the poisonous tree, meaning the entire prosecution of the tax fraud and the things that the agents discovered once they saw all the multiple tax deposits of tax return refunds into the defendant's bank account and then charged her two years later after a two-year investigation, I would submit as laid out in the government's brief that even if it was somehow improperly seized, that any taint had long dissipated under the applicable case law. And I'm happy to address any other questions that the court has. I think we understand your position. Thank you, Your Honors. Mr. Jankowski, you have a few minutes remaining. Thank you, Your Honor. Just a couple of points made, what Ms. Gavin just stated. In the attachment B, item 11, which Ms. Gavin referred to, which she claims authorizes the seizure of cash, that schedule does not authorize the seizure of all cash, but only that cash which relates to travel of Karen Mama, a.k.a. Karen Kimball, to Ghana in 2006. The warrant, that was what was limited. Including but not limited to. Don't forget that language. Reference to fraudulent activity. Items, evidence, detaining, secrecy. Right. Including but not limited to refers to paragraphs 1 through 11. It does not modify documents relating to the travel of Karen Mama to Ghana in 2006. Even though those words come right after that. Relating to the travel of Kimball to Ghana in 2006, including but not limited to, it relates to something else other than what it just said it relates to. I was never real good at grammar. But I think including but not limited to, if it meant that, would have been earlier in the sentence. It would have said all records and documents including but not limited to relating to travel to Ghana. I think the including but not limited to refers to these items 1 through 11, but all of those items 1 through 11 have to relate to travel to Ghana. That's my impression of English grammar. Whatever. Ms. Gavin refers to using a common sense approach to interpreting this warrant. And I agree. But one person's common sense may be different than another person's common sense. I think the most common sense comes from the Fourth Amendment. There's a lot of common sense there. And there's a particularity requirement in there that requires that the warrant specifically lay out what it intends. And the magistrate judge must approve what it is that is allowing the executive branch to seize. The Fourth Amendment yields itself to being interpreted in a common sense interpretation. But we've got so many cases in which it's just governed by the law. And those laws have been set out pretty specifically. And we don't get to say, well, he's going to look at this and just use common sense. The Fourth Amendment has got a lot of laws that tell you how to do it. One of them is that you cannot be hyper-technical on these things. You've got to be holistic in the way in which you evaluate these things. And I would respectfully submit that all those cases and all that law is subsumed into the concept of common sense. And that's what we would need to follow. And I don't think this is hyper-technical. The scope of the warrant is the very essence of the warrant. It's not hyper-technical to say, well, we meant to do more than we asked for. That I respectfully submit is not hyper-technical. That is the very essence of the Fourth Amendment, the very essence of the warrant requirement. With 18 seconds left, I just wanted to say that in the affidavit in support of the warrant, I believe it's paragraphs 11 and 12, the government essentially says that Ms. Kimball's husband, her purported husband, did not live in that residence. I just wanted to make clear that government should be a stop to arguing otherwise. It was clearly not her husband's residence that they were searching, that they seized the cash from. I see that I'm out of time, so if there's no other questions. Thank you, Your Honor. Again, we appreciate very much your undertaken representation of this client. We'll come down and greet counsel and then go on to our next case.
judges: William B. Traxler, Jr., James A. Wynn, Jr., Andre M. Davis